UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CENEEN L. B.,                     )  NO. CV 20-7089-MCS(E)
                                  )
              Plaintiff,          )
                                  )
     v.                           )  ORDER ACCEPTING FINDINGS,
                                  )
KILOLO KIJAKAZI, Acting           )  CONCLUSIONS AND RECOMMENDATIONS
Commissioner of Social Security,)
                                  )  OF UNITED STATES MAGISTRATE JUDGE
              Defendant.          )
_____)


     Pursuant to 28 U.S.C. section 636, the Court has reviewed the
Complaint, all of the records herein and the attached Report and
Recommendation of United States Magistrate Judge.  Further, the Court
has engaged in a de novo review of those portions of the Report and
Recommendation to which any objections have been made.  The Court
accepts and adopts the Magistrate Judge's Report and Recommendation.


     IT IS ORDERED that: (1) the Report and Recommendation of the
Magistrate Judge is accepted and adopted; (2) Plaintiff's motion for
summary judgment is denied; (3) Defendant's motion for summary
judgment is granted; and (4) Judgment is entered in favor of

1  Defendant.

2

3       IT IS FURTHER ORDERED that the Clerk serve forthwith a copy of

4  this Order, the Magistrate Judge's Report and Recommendation and the

5  Judgment of this date on Plaintiff, counsel for Plaintiff and counsel

6  for Defendant.

7

8       DATED:  October 25, 2021            .

9

10

11

                             MARK C. SCARSI

12                    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| CENEEN L. B., | ) | NO. CV 20-7089-MCS(E) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION OF** |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | **UNITED STATES MAGISTRATE JUDGE** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This Report and Recommendation is submitted to the Honorable Mark C. Scarsi, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 01-13 of the United States District Court for the Central District of California.

**PROCEEDINGS**

Plaintiff filed a complaint on August 6, 2020, seeking review of the Commissioner's denial of benefits. Plaintiff filed a motion for summary judgment on June 9, 2021. Defendant filed a motion for summary judgment on September 20, 2021. The Court has taken the

1    motions under submission without oral argument.  <u>See</u> L.R. 7-15;

2    "Order," filed August 10, 2020.

3

4                              **BACKGROUND**

5

6        Plaintiff asserted disability since December 23, 2003, alleging

7    chronic renal failure (Administrative Record ("A.R.") 290-93, 313,

8    332, 359, 433).  On August 23, 2004, Plaintiff was found disabled as

9    of December 23, 2003, upon an administrative finding that she met a

10   listed impairment (former Listing 6.02) (A.R. 15, 37-38, 136, 433).[1]

11   On October 23, 2014, after further administrative review, Plaintiff

12   was found no longer disabled as of October 1, 2014 (A.R. 15, 119-21).

13   In a decision dated June 20, 2017, an Administrative Law Judge ("ALJ")

14   also found that Plaintiff's disability had ended as of October 1, 2014

15   (A.R. 15, 101-08).  The Appeals Council subsequently granted review,

16   vacated the ALJ's decision and remanded the matter for further

17   proceedings (A.R. 15, 116-17).  The Appeals Council found that the ALJ

18   had failed to consider the disability period between October 1, 2014,

19   and the date of the ALJ's decision (<u>id.</u>).

20

21       On remand, a new ALJ reviewed the record and held a hearing on

22   September 23, 2019, wherein the ALJ heard testimony from Plaintiff, a

23   medical expert (Dr. James McKenna), and a vocational expert (A.R. 15-

24   22, 29-61).  In a decision dated October 7, 2019, the ALJ found that

25   ───────────

26       [1]   "[I]f a claimant's condition meets or equals the listed
     impairments, [s]he is conclusively presumed to be disabled and
27   entitled to benefits."  <u>Bowen v. New York</u>, 476 U.S. 467, 471
     (1986); <u>accord</u> <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1452 (9th Cir.
28   1993); <u>see</u> 20 C.F.R. §§ 404.1520(d), 416.920(d).

Plaintiff has continued to have severe chronic renal failure (A.R. 17).  The ALJ also found, however, that Plaintiff experienced medical improvement as of October 1, 2014, so as no longer to be deemed disabled under any listed impairment (A.R. 18).  The ALJ reasoned that, as of that date, Plaintiff's medical records from Kaiser Permanente show that her renal function was stable and she had responded successfully to treatment, as later confirmed by Dr. McKenna (id. (referencing, inter alia, Dr. McKenna's testimony at A.R. 38-42)).

For the period after October 1, 2014, the ALJ further determined that Plaintiff's impairment did not meet or equal a listed impairment, including Listing 6.09 (complications of chronic kidney disease (A.R. 17)).  The ALJ found that Plaintiff retained the residual functional capacity to perform a limited range of light work with: no work involving exposure to hazards or extreme temperatures; no climbing of ladders, ropes or scaffolds; no operating heavy equipment; no more than occasional climbing of ramps or stairs; and no more than frequent balancing, stooping, kneeling, crouching or crawling.  See A.R. 18-21 (giving significant weight to Dr. McKenna's opinion at A.R. 40, 45-46).  The ALJ concluded that, ever since October 1, 2014, Plaintiff has been capable of performing her past relevant work as a personnel clerk and receptionist (A.R. 21-22 (adopting vocational expert testimony at A.R. 57-58)).  Accordingly, the ALJ denied further disability benefits (A.R. 22).  The Appeals Council denied review (A.R. 1-3).

///

///

1                              **STANDARD OF REVIEW**

2

3          Under 42 U.S.C. section 405(g), this Court reviews the

4  Administration's decision to determine if: (1) the Administration's

5  findings are supported by substantial evidence; and (2) the

6  Administration used correct legal standards.  See Carmickle v.

7  Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,

8  499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner,

9  682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "such

10  relevant evidence as a reasonable mind might accept as adequate to

11  support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401

12  (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454

13  F.3d 1063, 1067 (9th Cir. 2006).

14

15          If the evidence can support either outcome, the court may

16          not substitute its judgment for that of the ALJ.  But the

17          Commissioner's decision cannot be affirmed simply by

18          isolating a specific quantum of supporting evidence.

19          Rather, a court must consider the record as a whole,

20          weighing both evidence that supports and evidence that

21          detracts from the [administrative] conclusion.

22

23  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and

24  quotations omitted).

25  ///

26  ///

27  ///

28  ///

**DISCUSSION**

Plaintiff contends that the Administration materially erred by: (1) mischaracterizing Dr. McKenna's testimony, which, according to Plaintiff, establishes that Plaintiff equaled Listing 6.09 for a portion of the period at issue; (2) failing to provide "substantial evidence" for rejecting Dr. McKenna's opinion; and (3) determining that Plaintiff's prior jobs qualified as "past relevant work." See Plaintiff's Motion, pp. 3-9. For the reasons discussed below, the Magistrate Judge recommends that Defendant's motion be granted and Plaintiff's motion be denied. The Administration's findings are supported by substantial evidence and are free from material[2] legal error.

**A.    Summary of the Relevant Medical Record**

Plaintiff previously reported that she had kidney failure and underwent a kidney transplant in 2005, followed by occasional infections. See A.R. 38-39, 554-55, 739-40; see also A.R. 471, 507, 513 (April, 2008, July, 2008 and October, 2009 notes indicating Plaintiff had recurrent urinary tract infections after her kidney transplant); see also A.R. 513-14, 546-53 (treatment notes for April, 2008 infection); A.R. 532-43 (treatment notes for May, 2009 infection); A.R. 451-64 (treatment notes for January, 2010 infection);

---

[2]    The harmless error rule applies to the review of administrative decisions regarding disability. See Garcia v. Commissioner, 768 F.3d 925, 932-33 (9th Cir. 2014); McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

A.R. 633-39, 707-08 (treatment notes for March, 2014 infection).

Plaintiff also had frequent infections in 2015, 2016, 2017 and 2019. See A.R. 40; see also A.R. 786-818, 933-1128 (hospital records for infection from June 16-18, 2015); A.R. 836-43, 918-25, 1249-1389 (hospital records for infection from January 1-4, 2016); A.R. 823-26, 905-17, 1393-1549 (hospital records for infection from January 21-23, 2016); A.R. 846-48, 902-03, 1587-96 (treatment notes for April 23, 2016 infection); A.R. 828-29, 892-94, 1670-83 (treatment notes for July 22, 2016 infection); A.R. 1742-51 (treatment notes for November 4, 2016 infection)[3]; A.R. 1803-1943, 1958-2125 (hospital records for infection from January 23-25, 2017, reporting that the last admission was on May 9, 2016 at A.R. 1818);[4] A.R. 2148-80, 2191 (treatment notes for September 4, 2017 infection); A.R. 2426-42 (treatment notes for March 20, 2019 infection); A.R. 2488-2704 (hospital records for infection from May 9-11, 2019); A.R. 2742-2935 (hospital records for infection from May 29-31, 2019).

///

///

///

///

///

///

---

[3]    But see A.R. 1684 (treatment note for July 25, 2016 reflecting that urine culture was negative).

[4]    There are no records for a hospital admission in May of 2016, however.  There are only records for an afternoon visit on May 9, 2016 (A.R. 1602-26).

Treating physician Dr. Annie Suh provided a letter dated
January 11, 2017,[5] stating:

> Ms. Ceneen [B] is a patient in the nephrology clinic at
> Kaiser Panorama City.  She has a history of end-stage-renal-
> disease for which she was on dialysis until 2005 when she
> underwent a kidney transplant.  She is on medications for

---

[5]   This letter apparently resulted from solicitations by
Plaintiff.  Plaintiff sent a message to Dr. Suh dated
September 15, 2016, requesting "a letter of verification that
[she] cannot work with [her] condition" (A.R. 1727).  Therein,
Plaintiff stated:

> My immune system is still low that I get infections and
> get sick easily if I mingle with other people for a
> long time.  I am reaching out to you.  I need your help
> from the bottom of my heart, I only have a few years to
> live my kidney will give up again soon, and I want to
> spend my short life with my kids & hubby.

(A.R. 1727).  On September 20, 2016, Dr. Suh replied:

> I can write a letter stating your medical conditions
> and limitations due to your immune system.  But <u>since
> you're doing so well with your kidney transplant and
> since your kidney function is excellent, I don't think
> I can say that you are not able to work due to your
> kidney disease</u>.  Usually there should be significant
> kidney dysfunction and symptoms rising from that to
> qualify for disability.

(A.R. 1727) (emphasis added).  On September 26, 2016, Plaintiff
requested, "Is it ok if you don't mention in your letter that I
can work, only my medical condition and my immune system" (A.R.
1735).  On January 5, 2017, Plaintiff requested more information
for her disability claim, suggesting that Dr. Suh could modify
the September letter to include an opinion on "the need to take
frequent unscheduled breaks and days off 3 to 4 days per month
when I get my UTI" (A.R. 1799, 1948-50; <u>see also</u> A.R. 1801
(January 3, 2017 request)).  Dr. Suh then indicated she would
prepare the requested letter (A.R. 1949).

her transplant which potentially lowers her immunity.  Ms.
[B] has had infections including urinary tract infections
and sepsis due to urinary tract infection and has required 2
hospitalizations in January 2016.  In addition, she has had
urgent care visits for urinary tract infection symptoms and
has been treated for such.  ¶  At this time, Ms. [B] is at
an increased risk for infections due to the medications that
are needed for her kidney transplant.

(A.R. 2129).  Upon further request by Plaintiff (see A.R. 2705-11),
Dr. Suh prepared a letter dated May 2, 2017, opining, "During the
episodes of infection [Plaintiff] is not able to work due to symptoms
resulting from her infection" (A.R. 2130).  However, Dr. Suh told
Plaintiff, "[s]ince your kidney function is excellent, I cannot say
that your kidney disease is a reason for disability" (A.R. 2706).

Medical expert Dr. McKenna testified that the listing which would
address Plaintiff's kidney condition is "probably" Listing 6.09 (A.R.
40-41).  With respect to the October, 2014 time frame in which
Plaintiff medically improved, Dr. McKenna testified that Plaintiff did
not then meet Listing 6.09 because Listing 6.09 requires at least
three hospitalizations within a consecutive 12-month period at least
30 days apart, and Plaintiff had "totally improved from the chronic
kidney disease" such that "she [did not] fit into anywhere near
[Listing 6.09] at all" (A.R. 41).

With respect to the period after Plaintiff medically improved,
Dr. McKenna testified that Plaintiff's "situation became complicated

8

1  after 6/16/15, when she began to get a series of urinary tract
2  infections for which she had extended hospitalizations" (A.R. 42).
3  Dr. McKenna referenced the medical record concerning Plaintiff's
4  hospitalizations for urinary tract infections from June 16 to June 18,
5  2015, from January 1 to January 4, 2016, from January 21 to
6  January 23, 2016, from January 23 to January 25, 2017, from May 9 to
7  May 11, 2019, and from May 29 to May 31, 2019 (A.R. 42-43).  Dr.
8  McKenna appeared to opine that Plaintiff equaled Listing 6.09 from
9  June 2015 onwards (A.R. 43-44 (stating, "So, I think, your honor, she
10  would equal 6.09 from the 6.15 – 6.16 listing onwards.")).

12      The ALJ responded that there were not three hospitalizations
13  within one year that were 30 days apart, as specifically required for
14  disability under Listing 6.09 (A.R. 44-45).  Dr. McKenna then conceded
15  that the admissions were not 30 days apart (A.R. 44).  Plaintiff's
16  counsel attempted to ask Dr. McKenna whether Plaintiff would "equal"
17  the severity of Listing 6.09, even though Plaintiff did not "meet" the
18  listing:

20  ATTY:    Doctor, you testified that Ms. [B] would equal medical
21           listing 6.09.  She will not meet the listing because
22           she doesn't have the number of hospitalizations 30 days
23           apart and so forth.  But would she equal, nevertheless,
24           the severity of the criteria of the medical listing
25           6.09?
26  ALJ:     [Counsel], that is actually a province that I
27           determine. . . .  And I've told him the equivalency is
28           not permitted in this case where the listing itself is

```
 1                    so specific and we don't have other complicating
 2                    factors.
 3      ATTY:      Right.
 4      ALJ:       So you need to move on to a different line of
 5                    questioning.
 6      ATTY:      But she doesn't meet the specific criteria.
 7      ALJ:       No, she does not.
 8      ATTY:      But the question is whether or not she equals for the
 9                    doctor to testify that she [inaudible].
10      ALJ:       Well, that is not his determination, actually.  That's
11                    mine.
12      ATTY:      But the doctor can't give an opinion as to whether or
13                    not the claimant equals the criteria of the listing?
14      ALJ:       [Counsel], he's given that and I didn't accept it, so
15                    you need to move on to a different area.
16   (A.R. 46-47).
17
18      B.   **Substantial Evidence Supports the Conclusion that Plaintiff**
19           **Medically Improved as of October 1, 2014 and Was Not**
20           **Disabled Thereafter.**
21
22        Plaintiff does not appear to challenge the ALJ's determination
23   that her medical condition improved as of October 1, 2014, such that
24   she no longer met a listed impairment.  As detailed above, Dr. Suh and
25   Dr. McKenna both opined that Plaintiff's kidney functioning improved
26   after her transplant to the point that her kidneys were functioning
27   normally.  See A.R. 1727 (Dr. Suh stating that Plaintiff's kidney
28   function was excellent, and indicating that she did not think she
```

10

1  could say that kidney disease rendered Plaintiff unable to work); A.R.
2  41 (Dr. McKenna testifying that, as of October of 2014, Plaintiff had
3  "totally improved from the chronic kidney disease" she had
4  previously).  These opinions furnish substantial evidence of
5  Plaintiff's improved condition.  See Orn v. Astrue, 495 F.3d 625,
6  631-32 (9th Cir. 2007) (opinion of examining physician based on
7  independent clinical findings can provide substantial evidence to
8  support administrative conclusion of non-disability); Tonapetyan v.
9  Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinion of non-examining
10 physician "may constitute substantial evidence when it is consistent
11 with other independent evidence in the record"); Andrews v. Shalala,
12 53 F.3d 1035, 1041 (9th Cir. 1995) (where the opinions of
13 non-examining physicians do not contradict "all other evidence in the
14 record" an ALJ properly may rely on these opinions) (citation and
15 emphasis omitted).

16

17     Dr. McKenna opined that, after October of 2014, Plaintiff
18 retained the residual functional capacity the ALJ found to exist.
19 Compare A.R. 18, 21 (ALJ's residual functional capacity determination)
20 with A.R. 45-46 (Dr. McKenna's testimony).  This opinion provides
21 substantial evidence to support the ALJ's residual functional capacity
22 determination for the relevant time period.  Andrews v. Shalala, 53
23 F.3d at 1041.  The vocational expert testified that a person with this
24 residual functional capacity would be capable of performing
25 Plaintiff's past relevant work as a personnel clerk/receptionist (A.R.
26 56-58).  The ALJ properly relied on this testimony in denying
27 disability benefits for the period following Plaintiff's medical
28 improvement.  See Barker v. Secretary of Health and Human Services,

882 F.2d 1474, 1478-80 (9th Cir. 1989); Martinez v. Heckler, 807 F.2d 771, 774-75 (9th Cir. 1986).


C.   **Plaintiff's Arguments Are Unavailing.**[6]


   1.   **The ALJ Did Not Materially Err in the Evaluation of Dr. McKenna's Opinion.**


   If a claimant suffers a severe impairment, the ALJ is required to decide whether the impairment meets or equals one of the listed impairments. See 20 C.F.R. §§ 404.1520(d), 416.920(d); Marcia v. Sullivan, 900 F.2d 172, 174-75 (9th Cir. 1990). As previously indicated, disability is presumed if a claimant's impairment or combination of impairments meets or is medically equivalent to one of the listed impairments. Id.; 20 C.F.R. §§ 404.1520(d), 416.920(d).


   Plaintiff has the burden of demonstrating disability under the Listings. See Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); see also Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990) ("Zebley"), superseded by statute on other grounds as stated in Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013) (burden is on the claimant to show that his or her impairment

---

   [6]   The Court has considered and rejected all of Plaintiff's arguments. The Court discusses Plaintiff's principal arguments herein. Neither Plaintiff's arguments nor the circumstances of this case show any "substantial likelihood of prejudice" resulting from any error allegedly committed by the ALJ. See generally McLeod v. Astrue, 640 F.3d 881, 887-88 (9th Cir. 2011) (discussing the standards applicable to evaluating prejudice).

meets <u>all</u> of the specified medical criteria for a Listing, or present medical findings equal in severity to <u>all</u> the criteria for the most similar listed impairment).  "An impairment that manifests only some of [the listed] criteria, no matter how severely, does not qualify." <u>Zebley</u>, 493 U.S. at 530 (citing Social Security Ruling 83-19).  To prove equivalence, a claimant must offer a "theory" as to how impairments equal a listing, identifying specific medical evidence in the record.  <u>Lewis v. Apfel</u>, 236 F.3d 503, 514 (9th Cir. 2001); <u>see generally</u> 20 C.F.R. §§ 404.1526, 416.926 (discussing medical equivalence).[7]

> "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his [or her] . . . impairments is as severe as that of a listed impairment."  The reason for this is clear. Listed impairments are purposefully set at a high level of severity because "the listings were designated to operate as a presumption of disability that makes further inquiry unnecessary."

<u>Kennedy v. Colvin</u>, 738 F.3d at 1176 (quoting <u>Zebley</u>, 493 U.S. at 531-32) (noting, "Since <u>Zebley</u>, we have followed this approach, requiring claimants to equal each criterion of [a listing] rather than relying

---

[7]    Social Security Ruling 83-19 explains that equivalency can be found for a listed impairment "for which one or more of the specified medical findings is missing from the evidence but for which other medical findings of equal or greater clinical significance and relating to the same impairment are present in the medical evidence."  <u>Id.</u>, 1983 WL 31248 (Jan. 1, 1983).

1  on overall functional impact.").

2

3      A decision regarding equivalency is based on "all evidence in [a
4  claimant's] record about [his or her] impairment(s) and its effect on
5  [a claimant] that is relevant to this finding" and on designated
6  medical or psychological consultants.  20 C.F.R. §§ 404.1526(c),
7  416.926(c).  It is ultimately the province of the Commissioner to
8  decide whether a claimant meets or equals a listed impairment.  See 20
9  C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider
10  opinions from medical sources on issues such as whether your
11  impairment(s) meets or equals the requirements of any impairment(s) in
12  the Listing of Impairments in appendix 1 to this subpart, your
13  residual functional capacity [], or the application of vocational
14  factors, the final responsibility for deciding these issues is
15  reserved to the Commissioner.").  In so deciding, an ALJ "is no more
16  able to ignore specific requirements [of the listings] than she is
17  able to add new ones."  Young v. Sullivan, 911 F.2d 180, 181, 184-85
18  (9th Cir. 1990) (citation omitted).

19

20      Under Listing 6.09, Plaintiff must demonstrate:

21

22      at least three hospitalizations within a consecutive
23      12-month period and occurring at least 30 days apart.  Each
24      hospitalization must last at least 48 hours, including hours
25      in a hospital emergency department immediately before the
26      hospitalization.

27  ///

28  ///

1  <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 6.09.   Here, substantial

2  evidence supports the ALJ's conclusion that Plaintiff did not meet or

3  equal Listing 6.09 during the relevant time period.

4

5      In finding Plaintiff did not meet or equal Listing 6.09 after the

6  date she medically improved, the ALJ relied on the medical record and

7  Dr. McKenna, who ultimately conceded that Plaintiff did not experience

8  the requisite number of hospitalizations at least 30 days apart

9  necessary to meet Listing 6.09.  <u>See</u> A.R. 17, 21; <u>see also</u> A.R. 44

10 (Dr. McKenna's concession).  Plaintiff does not appear to contest the

11 finding that she failed to meet Listing 6.09.  Instead, Plaintiff

12 argues that the ALJ: (1) mischaracterized Dr. McKenna's testimony as

13 stating that Plaintiff did not "meet or equal" Listing 6.09, when Dr.

14 McKenna assertedly had opined that Plaintiff's impairment(s) equaled

15 Listing 6.09; and (2) otherwise failed to provide adequate reasons for

16 rejecting Dr. McKenna's opinion that Plaintiff's condition equaled

17 Listing 6.09 from June of 2015 onward.  <u>See</u> Plaintiff's Motion, p. 8.

18 Plaintiff has not offered any particular theory regarding how

19 Plaintiff's impairments are equal in severity to Listing 6.09.  She

20 merely relies on Dr. McKenna's testimony to urge equivalence.

21 <u>See</u> Plaintiff's Motion, pp. 3-8.

22

23      An ALJ's material mischaracterization of the record can warrant

24 remand.  <u>See, e.g.</u>, <u>Regennitter v. Commissioner of Social Sec. Admin.</u>,

25 166 F.3d 1294, 1297 (9th Cir. 1999).  It is true that the ALJ

26 inaccurately stated in the written decision that Dr. McKenna had

27 testified Plaintiff's condition did not "meet <u>or equal</u>" Listing 6.09

28 (A.R. 17) (emphasis added).  However, such mischaracterization was not

material, in light of: (1) Dr. McKenna's testimony which ultimately conceded Plaintiff did not have the required hospitalizations to meet Listing 6.09; and (2) the lack of any theory or medical findings arguably equaling in severity all the criteria for Listing 6.09 (Kennedy v. Colvin, 738 F.3d at 1174); and (3) the actual medical record regarding treatment for Plaintiff's infections.  As the ALJ explained, the record shows that Plaintiff's

> major problem is clearly the ongoing recurrent urinary tract infections she experiences . . . , requiring several emergency-room visits and a few brief hospitalizations (beginning in approximately June 2015, and most recently in May 2019).  However these episodes are not constant, and the claimant has clearly stabilized after either emergency room and/or inpatient hospital care on each occasion.  The claimant's treating nephrologist, Dr. Suh, has also clearly indicated that the claimant has only been physically incapacitated during these episodes, and that her kidney functioning is normal.  Otherwise, the majority of the treating records from Kaiser Permanente show that her overall physical functioning is basically stable. . . .  Dr. McKenna further noted that . . . she is not experiencing infections or other complications, at a frequency, which would satisfy the criteria in [Listing] 6.09. . . .

(A.R. 20-21).

///

///

16

1    Thus, any error relating to the ALJ's mischaracterization of part
2  of Dr. McKenna's testimony was harmless.  See, e.g., Manny v. Colvin,
3  2016 WL 7042967, at *6 (M.D. Pa. Aug. 23, 2016) (although evidence
4  revealed that claimant suffered from serious, ongoing and progressive
5  renal disease, where it was undisputed that Listing 6.09's
6  hospitalization requirement was not satisfied, the ALJ was compelled
7  to deny the application and the court was required to affirm the
8  decision; "[a]n administrative law judge is not required to accept a
9  physician's opinion when that opinion is not supported by the
10  objective medical evidence (raw data) in the record") (citing, inter
11  alia, Zebley, 493 U.S. at 531), report and recommendation adopted,
12  2016 WL 7016281 (M.D. Pa. Dec. 1, 2016).

13

14    Although the ALJ explained at the hearing reasons for the
15  rejection of Dr. McKenna's initial opinion that Plaintiff's condition
16  would equal Listing 6.09, the ALJ did not repeat such explanation in
17  the ALJ's written decision.  In the written decision, the rejection is
18  implicit.  No material error resulted thereby.  An ALJ is only
19  required to explain why significant probative evidence has been
20  rejected.  See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012
21  (9th Cir. 2003) ("ALJ does not need to discuss every piece of
22  evidence.") (citations and internal quotation marks omitted); Vincent
23  v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984); see also Kennedy
24  v. Colvin, 738 F.3d at 1176 ("an ALJ is not required to discuss the
25  combined effects of a claimant's impairments or compare them to any
26  listing in an equivalency determination, unless the claimant presents
27  evidence in an effort to establish equivalence") (internal quotations
28  and citation omitted).  The written decision's failure to discuss Dr.

McKenna's initial opinion that Plaintiff equaled listing 6.09 is harmless.  As the ALJ explained during the hearing, in accordance with the authorities detailed above (e.g., 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)), and as Plaintiff concedes (see Plaintiff's Motion, p. 8), the determination of listings equivalence is for the ALJ to make (A.R. 46-47).  Here, the ALJ reasonably rejected equivalency because the criteria in Listing 6.09 are extremely specific, and there were no other complicating factors in Plaintiff's case (id.).  As the ALJ explained, Dr. McKenna testified that Plaintiff's kidney functioning had dramatically improved since her 2005 transplant (as confirmed by Dr. Suh), Plaintiff has had only periodic infections and Plaintiff has not experienced infections or other complications at a frequency which would satisfy Listing 6.09 (A.R. 20-21, 40-44).  Under these circumstances, the ALJ did not materially err by failing to explain further in the written decision the ALJ's rejection of Dr. McKenna's initial equivalency opinion.  See Lewis v. Apfel, 236 F.3d at 514 (ALJ's failure to explain conclusion regarding listings was harmless error because the Plaintiff offered no theory or evidence for how her impairments equaled a listed impairment); Gaston v. Commissioner of Social Sec. Admin., 577 Fed. App'x 739, 741 (9th Cir. 2014) (ALJ was not required to provide "in-depth" equivalency analysis because the claimant did not present medical evidence showing that his impairments, taken together, medically equaled a listing); compare Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (ALJ erred in failing to discuss in detail why claimant did not equal a listing where the claimant presented evidence (i.e., alternative diagnostic tests and other evidence regarding his combination of impairments) in an effort to establish equivalence).

1        Relatedly, the ALJ's errors were harmless because Plaintiff
2    failed to carry her burden of proving listings equivalence.  Again,
3    Plaintiff failed to offer any theory (or specific medical findings)
4    regarding how her impairments allegedly equaled Listing 6.09.

5

6        While Plaintiff argues contrary interpretations of the record, it
7    was for the ALJ to interpret the evidence, evaluate credibility and
8    resolve any conflicts in the evidence.  See Treichler v. Commissioner,
9    775 F.3d 1090, 1098 (9th Cir. 2014) (court "leaves it to the ALJ" "to
10   resolve conflicts and ambiguities in the record"); accord Lewis v.
11   Apfel, 236 F.3d at 509; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th
12   Cir, 1995).  When evidence "is susceptible to more than one rational
13   interpretation," the Court must uphold the administrative decision.
14   See Andrews v. Shalala, 53 F.3d at 1039-40; accord Thomas v. Barnhart,
15   278 F.3d 947, 954 (9th Cir. 2002); Sandgathe v. Chater, 108 F.3d 978,
16   980 (9th Cir. 1997).  The Court will uphold the ALJ's rational
17   interpretation of the evidence in the present case notwithstanding any
18   conflicts in the evidence.

19

20           2.    **The ALJ Did Not Materially Err in Finding that**
21                 **Plaintiff's Prior Jobs Qualified as Past Relevant Work.**

22

23       Plaintiff also argues that the ALJ erred in finding that
24   Plaintiff's prior jobs qualified as past relevant work.  Plaintiff
25   points out that she last worked in 2003 – within 15 years of her
26   cessation date of October 1, 2014, but not within 15 years of the
27   October 7, 2019 date of ALJ's adjudication.  See Plaintiff's Motion,
28   p. 9 (citing Social Security Ruling 82-62, 1982 WL 31386 (1982) ("The

15-year guide is intended to insure that remote work experience which could not reasonably be expected to be of current relevance is not applied. . . .   When deciding whether a title II or title XVI beneficiary <u>continues</u> to be disabled, relevant past work is work he or she performed in the 15-year period prior to the adjudication of the issue of continuing disability.") (emphasis original)).   However, as the Commissioner's policy statement explains, the relevant 15-year period consists of the 15 years prior to the <u>initial</u> continuing disability review determination.   <u>See</u> Program Operations Manual System DI 25001.001 Medical and Vocational Quick Reference Guide ¶ 64 (May 30, 2018), available at https://secure.ssa.gov/apps10/poms.nsf/ lnx/0425001001.   In this case, therefore, the operative 15-year period is the 15-year period prior to the initial October 23, 2014 continuing disability review determination (rather than the 15-year period prior to ALJ's decision).   The operative period encompasses Plaintiff's prior work.

**RECOMMENDATION**

    For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) accepting and adopting this Report and Recommendation; (2) denying Plaintiff's motion for summary judgment; (3) granting

///
///
///
///
///
///

1  Defendant's motion for summary judgment; and (4) directing that

2  Judgment be entered in favor of Defendant.

3

4          DATED: September 24, 2021.

5

6

                                    /s/
7                          _____
                           CHARLES F. EICK
                           UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>NOTICE</u>**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.